[Crim. No. 4100. In Bank.—August 24, 1937.]

THE PEOPLE, Respondent, v. MARTIN V. BIGGS et al., Defendants; HENRY C. GROSECLOSE, Appellant.

R. A. Newell and Hugh G. Maddox for Appellant.

Gladys Towles Root, as *Amicus Curiae* on Behalf of Appellant.

U. S. Webb, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

LANGDON, J.—This is an appeal from a judgment and order denying appellant's motion for new trial, after conviction of grand theft, with two prior convictions of felony.

Defendant and appellant Groseclose conspired with defendant Biggs and one James Bridger to stage a purported automobile accident in order to defraud several insurance companies. They succeeded in carrying out their object, and appellant collected substantial sums on two accident policies, and a further substantial sum by settlement with the insurance carrier which had insured defendant Biggs, the driver of the car, against public liability. ■ The evidence was clearly sufficient to establish the commission of the offenses, and need not be reviewed here. Two minor objections are raised by appellant: asserted insufficiency of the corroboration of the testimony of the accomplice Bridger, and alleged impropriety in permitting amendment of the information to conform to proof as to the date of the commission of the offense and the sum of money involved. There is no merit in either point and discussion of them is unnecessary.

■ A question of grave importance, and one which has never been decided in this state, is the main issue on this appeal, and it was in order to give full consideration to this

question that we granted a hearing after decision by the District Court of Appeal, Second Appellate District. Appellant was twice previously convicted of felonies in the state of Texas. These prior convictions were charged and proved at the trial. As a result of such proof, under our law appellant was adjudged an habitual criminal and sentenced to life imprisonment. (See Pen. Code, sec. 644.) But appellant moved to strike from the information all reference to these convictions, and after denial of his motion introduced into evidence, proof of full pardons by the Governor of Texas for each of these prior offenses. He contended that because of the pardons, the prior convictions could not be considered in determining whether he was an habitual criminal. The trial court and the District Court of Appeal held contrary to his view, and the correctness of this holding is the issue now before us. In brief, the question is whether a conviction may, after pardon of the offender, be deemed a prior conviction within the meaning of our statutes prescribing increased punishment for habitual criminals or those previously convicted of crime. We are of the opinion that it may.

Our statutes, like most of the acts in other states, are silent on this point. They refer simply to prior ''convictions'' or to persons previously ''convicted'', making no other qualification or explanation save that the defendant must have served a term of imprisonment therefor. (See Pen. Code, secs. 644, 666, 667; see, also, secs. 668, 1168, which do not require service of a term of imprisonment.) This fact would in itself appear to be an answer to appellant's contention, for if he has suffered prior convictions, he comes within the classification of persons who are to be subjected to heavier punishment for subsequent offenses, and must be so punished. It is immaterial that the statutes do not expressly refer to persons pardoned after conviction, since by failure to exclude them, they are obviously included within the general provisions. This is a necessary conclusion from the language of the statutes, and it is determinative of the present case unless there is something in the nature of a pardon which compels a different interpretation. It should be borne in mind, in this connection, that the question is solely one of the legislative intent; the constitutional power of the legislature to impose a heavier penalty for the subsequent conviction, despite a

prior pardon, is settled. (*Carlesi* v. *New York,* 233 U. S. 51 [34 Sup. Ct. 576, 58 L. Ed. 843].)

Appellant relies largely upon a number of declarations by various authorities as to the general effect of a pardon. The following are examples: ''The power to pardon is something more than the power to release from servitude. Pardon is the remission of guilt, amnesty, oblivion or forgetfulness.'' (*People* v. *Hale,* 64 Cal. App. 523, 533 [222 Pac. 148].) ''The effect of a pardon (under the rules of the common law) is to make the offender a new man; to acquit him of all corporal penalties and forfeitures annexed to that offense for which he obtains a pardon; it gives him a new credit and capacity . . . '' (*People* v. *Bowen,* 43 Cal. 439, 442 [13 Am. Rep. 148], quoting from Blackstone's Commentaries.) ''A pardon reaches both the punishment prescribed for the offence and the guilt of the offender; and when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense . . . if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity.'' (*Ex parte Garland,* 4 Wall. 333, 380 [18 L. Ed. 366].) Similar expressions may be found in numerous other cases.

But the somewhat extravagant language occasionally employed must be contrasted with the actual decisions of the courts. It is universally established that a pardon exempts the individual from the punishment which the law inflicts for the crime which he has committed; and generally speaking, it also removes any disqualifications or disabilities which would ordinarily have followed from the conviction. To say, however, that the offender is ''a new man'', and ''as innocent as if he had never committed the offense'', is to ignore the difference between the crime and the criminal. A person adjudged guilty of an offense is a convicted criminal, though pardoned; he may be deserving of punishment, though left unpunished; and the law may regard him as more dangerous to society than one never found guilty of crime, though it place no restraints upon him following his conviction. The criminal character or habits of the individual, the chief postulate of habitual criminal statutes, is often as clearly disclosed by a pardoned conviction as by one never condoned. The

broad generalizations quoted above are, if taken too literally, logically unsound as well as historically questionable. (See Williston, Does a Pardon Blot Out Guilt?, 28 Harv. L. Rev. 647; *People* v. *Carlesi,* 154 App. Div. 481 [139 N. Y. Supp. 309]; 13 Columb. L. Rev. 418; *In re Lavine,* 2 Cal. (2d) 324 [41 Pac. (2d) 161]; 4 Cal. L. Rev. 236.)

Statutes imposing increased punishment for prior offenders are not new, and they have been before the courts on many occasions. The distinction pointed out above, between the offense and the offender, has been repeatedly emphasized. One of the apt illustrations is found in the contention that these statutes are unconstitutional, as *ex post facto* laws or for some other reason. The uniform answer has been that it is the second or subsequent offense which is punished, not the first; and that in determining the nature of the penalty to be inflicted, the legislature is justified in taking into consideration the previous criminal conduct of the defendant. (See *In re Rosencrantz,* 205 Cal. 534 [271 Pac. 902]; *McDonald* v. *Massachusetts,* 180 U. S. 311 [21 Sup. Ct. 389, 45 L. Ed. 542]; note, 58 A. L. R. 20; 11 Minn. L. Rev. 561.)

With respect to the precise question before us, namely, the effect of a prior conviction which has been pardoned, the courts are in conflict; but perhaps the weight of authority, and certainly of critical opinion, is to the effect that the pardon is immaterial, and that the defendant may be adjudged a prior offender and given the increased punishment as such. (See *People* v. *Carlesi, supra* (affirmed, 208 N. Y. 547 [101 N. E. 1114]; 233 U. S. 51 [34 Sup. Ct. 576, 58 L. Ed. 843]); *People* v. *Murphy,* 224 App. Div. 834 [279 N. Y. Supp. 762]; *Mount* v. *Commonwealth,* 2 Duvall, [63 Ky.] 93; *Herndon* v. *Commonwealth,* 105 Ky. 197 [48 S. W. 989, 88 Am. St. Rep. 303]; *State* v. *Edelstein,* 146 Wash. 221 [262 Pac. 622]; 16 C. J. 1342, sec. 3157; note, 58 A. L. R. 20, 49; 13 Columb. L. Rev. 418; 14 Minn. L. Rev. 293; 78 U. Pa. L. Rev. 561; 28 Harv. L. Rev. 647, 655; 41 Harv. L. Rev. 918; 5 Fordham L. Rev. 166; 3 So. Cal. L. Rev. 438; 22 Journ. Crim. Law 122.) As the court states, in *People* v. *Carlesi, supra,* 139 N. Y. Supp. 309, 312: "The pardon of this defendant did not 'make a new man' of him. It did not 'blot out' the fact or the record of his conviction . . . The pardon in this case merely restored the defendant to his civil rights. If it had been granted be-

fore his term of imprisonment had been served, it would also have relieved the defendant of that. But it did not obliterate the record of his conviction, or blot out the fact that he had been convicted . . . It relieved the defendant of the consequences which the law attached to his offense. But the defendant is to be punished now solely in consequence of his second offense. The fact of the former conviction is an element merely in determining the criminality of the second offense . . . The Legislature of this state has said that one who commits a crime after having been convicted of another crime is a greater offender than as though he had not previously been convicted, and the punishment inflicted is solely for the second offense, to which a greater degree of criminality is thus attached. That degree of criminality is not at all lessened by the fact of a pardon which assumes his guilt, remits the punishment, and affords him an opportunity to become a law-abiding citizen. It was solely within the province of the Legislature to attach such greater criminality to the second offense from the mere fact of a conviction for a first, and the executive by the exercise of the pardoning power could no more interfere with the exercise of legislative power than the Legislature could interfere with the power to pardon.'' And in *Mount* v. *Commonwealth, supra,* the court said : ''The pardon relieved the convict of the entire penalty incurred by the offense pardoned, and nothing else or more . . . the augmented punishment is for the last, and not at all for the first offense; and, of course, a pardon of the first could, in no way or degree, operate as a pardon of the last offense or remission of any portion of the punishment denounced for the perpetration of it.'' It may also be observed, in the words of one commentator, that ''this view would in the majority of cases effectuate the intention of the executive in forgiving the first offense, for though at the time of granting the pardon he evidently considered the offender worthy of restoration to his civil rights, he would undoubtedly have been of a different opinion had he suspected that the applicant for clemency possessed habitually criminal tendencies.'' (Note, 13 Columb. L. Rev. 418, 421.)

The other view, holding that the pardoned offense cannot be considered, is based upon the literal application of the theory that the pardon ''blots out guilt'', and ''wipes out the offense'', which is then regarded as never having been

committed. (See *Edwards* v. *Commonwealth,* 78 Va. 39 [49 Am. Rep. 377]; *State* v. *Martin,* 59 Ohio St. 212 [52 N. E. 188, 69 Am. St. Rep. 762, 43 L. R. A. 94]; *Tucker* v. *State,* 14 Okl. Cr. 54 [167 Pac. 637]; *State* v. *Lee,* 171 La. 744 [132 So. 219]; *Scrivnor* v. *State,* 113 Tex. Cr. Rep. 194 [20 S. W. (2d) 416].)

Our own decisions do not, despite such general remarks as we have already quoted, accept this extreme view in its entirety. Thus, a witness may be impeached by proving his conviction of a felony, though he may offer evidence of the pardon in rehabilitation. (*People* v. *Hardwick,* 204 Cal. 582 [269 Pac. 427, 59 A. L. R. 1480]; see 16 Cal. L. Rev. 161; 1 So. Cal. L. Rev. 200; 2 Wigmore, Evidence, 2d Ed., secs. 980, 1116.) And a pardon of a convicted felon, as recently declared by this court, "does not restore his character", and "does not obliterate the act itself". "The very essence of a pardon is forgiveness or remission of penalty. (*State* v. *Hazzard,* 139 Wash. 487 [247 Pac. 957, 47 A. L. R. 538].) It implies guilt and does not wash out the moral stain." (*In re Lavine,* 2 Cal. (2d) 324, 329 [41 Pac. (2d) 161, 163].) In the Lavine case, *supra,* wherein an attorney disbarred for a misdemeanor conviction sought reinstatement after securing a full pardon, the application was held insufficient in the absence of a showing of moral rehabilitation. We pointed out that the broad language of *Ex parte Garland, supra,* has been greatly limited and sometimes repudiated by later cases. (See, also, 4 Cal. L. Rev. 236.)

After a full consideration of the expressions of the courts, both in this and other jurisdictions, we are satisfied that the contention of appellant cannot be sustained. We are unable to see how the pardon, relieving the offender from the effects or disabilities of his first crime, can in addition prevent the normal application of the statute punishing him for a subsequent offense. In its provisions for increased punishment for prior offenders, the legislature could doubtless make an exception in favor of persons pardoned, if it had reason to believe that such persons, though found guilty of a subsequent offense, were no more dangerous to society, because no more criminal in character, than persons first convicted. It has not seen fit to do so, and unless it does, this court cannot usurp the legislative function of determining the appropriate punishment for offenders coming within the statutory classifications.

We leave open the question, not presented by this case, whether a different result might be reached if the defendant should establish, by satisfactory proof, that his pardon was granted after an investigation and determination of his innocence of the crime charged. (See *People* v. *Dutton,* Crim. 4110 [*ante,* p. 505], [71 Pac. (2d) 218], this day filed.) Nor do we express any opinion on the further point, not raised herein, whether the trial court in such circumstances might exercise the discretion conferred upon it by the 1935 amendment to section 644 of the Penal Code, and adjudge the defendant not to be an habitual criminal.

The judgment and order are, and each is, affirmed.

Curtis, J., Shenk, J., Seawell, J., and Nourse, J., *pro tem.,* concurred.

Edmonds, J., concurred in the judgment.

Rehearing denied.